IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BRANDLE, REBECCA GREGG, and DIANA GUTHRIE<br><br>              Plaintiffs,<br><br>    v.<br><br>MCKESSON CORPORATION, ELI LILLY AND COMPANY, AAIPHARMA, INC., AAIPHARMA LLC, AAI DEVELOPMENT SERVICES, INC., NEOSAN PHARMACEUTICALS, INC., ANODYNE PHARMACEUTICALS, INC., QUALITEST PHARMACEUTICALS, INC., VINTAGE PHARMACEUTICALS, INC., PROPST DISTRIBUTION, INC., BRENN DISTRIBUTION, INC., BRENN MANUFACTURING, INC., VINTAGE PHARMACEUTICALS, LLC, GENERICS INTERNATIONAL (US), INC., GENERICS BIDCO I, LLC, GENERICS BIDCO II, LLC, GENERICS INTERNATIONAL (US PARENT), INC., ENDO PHARMACEUTICALS, INC., ENDO PHARMACEUTICALS HOLDINGS INC., CORNERSTONE BIOPHARMA, INC., CORNERSTONE BIOPHARMA HOLDINGS, INC., TEVA BIOPHARMACEUTICALS, INC., TEVA PHARMACEUTICALS USA, INC, MYLAN PHARMACEUTICALS, INC., MYLAN, INC, COVIDIEN PLC, COVIDIEN INC., MALLINCKRODT INC., WATSON PHARMACEUTICALS, INC., ABLE LABORATORIES, INC., ARISTOS PHARMACEUTICALS, INC., and DOES 1 through 50, inclusive,<br><br>              Defendants.<br>                                                                                 / | No. C 12-05970 WHA<br><br>**ORDER GRANTING<br>MOTION TO REMAND** |

**INTRODUCTION**

In this pharmaceutical product-liability action, plaintiffs move to remand back to state court. Remand is **GRANTED**.

**STATEMENT**

This action is one of many currently pending in state courts alleging injuries from the ingestion of propoxyphene. Plaintiffs here allege eighteen discrete state-law claims for relief against some or all defendants. The parties dispute when the present action was filed and how many times it has been removed: Plaintiffs assert that it was filed in state court in October 2011 and that it was removed twice, while defendant Eli Lilly and Company claims it was filed in state court in November 2012 and that it was removed once. The parties, however, do not dispute that in October 2012, plaintiffs, along with others in the similar actions, filed a motion for coordination before the California Judicial Counsel. In November 2012, defendants removed this action on two grounds: (1) Class Action Fairness Act of 2005 ("CAFA"); and (2) federal-question and supplemental jurisdiction. Plaintiffs now move to remand, arguing that neither basis was sufficient for removal. For the reasons stated below, this order agrees. The motion to remand is **GRANTED**.

**ANALYSIS**

After a case is removed from state court, the federal district court must remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. 1447(c). Furthermore, "the burden of establishing federal jurisdiction is upon the party seeking removal[,]" and removal statutes are strictly construed against removal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted). This order will now examine removal under CAFA before proceeding to an analysis of removal on federal-question and supplemental jurisdiction grounds.

    **1.**    **REMOVAL UNDER CAFA WAS IMPROPER.**

Removal of an action under CAFA is proper if it qualifies as a "mass action" with monetary relief claims of 100 or more plaintiffs proposed to be tried jointly on the grounds that their claims involve common questions of law or fact. *Abrego Abrego v. Dow Chem. Co.*,

443 F.3d 676, 689 (9th Cir. 2006). CAFA did not shift the burden of establishing federal jurisdiction: "under CAFA[,] the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Id.* at 685. The number of plaintiffs here — three — falls far short of 100. Instead, defendant points to the language of the coordination petition and to non-binding authority to argue that plaintiffs, by petitioning for coordination, collectively qualify as a mass action under CAFA since they number over 100 in the *aggregate*. Our court of appeals has not yet addressed this issue, but for the reasons stated below, this order disagrees with defendant.

### A.  Plaintiffs' Coordination Petition Does Not Call for a Joint Trial.

Although the coordination petition does include the language "for all purposes" that particular section quoted California Civil Procedure Code Section 404.1 as the basis for the petition, and cannot be reasonably construed as plaintiffs' intent to pursue a joint trial. Defendant also fails to note that 28 U.S.C. Section 1332 specifically singles out those kinds of actions from its scope: "the term 'mass action' shall not include any civil action in which the claims have been consolidated or coordinated solely for pretrial proceedings." 28 U.S.C. 1332(d)(11)(B)(ii). Furthermore, our court of appeals has emphasized that "Congress intended to limit the numerosity component of mass actions quite severely by including only actions in which the trial itself would address the claims of at least one hundred plaintiffs." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 954 (9th Cir. 2009). In light of 28 U.S.C. 1332(d)(11)(B)(ii)'s limiting language, "[our court of appeals] cannot sensibly entertain the notion that Congress intended to allow courts to override the considered legislative limitations on the 'mass action' concept." *Ibid*. Plaintiffs insist they filed the coordination petition for pretrial purposes, and because the petition contains no explicit request for the claims to be tried jointly, this order finds the language of the petition to be unavailing for defendant. If and when a mass trial is scheduled in state proceedings, there will be time enough then to remove.

### B.  *In re Abbott* Is Non-Binding and Inapposite.

Defendant cites *In re Abbott Labs, Inc.*, 698 F.3d 568 (7th Cir. 2012), for the proposition that a coordination petition should be reasonably construed as a proposal for joint trial, even

3

though it does not expressly request it.  Putting aside for the moment that Seventh Circuit decisions are non-binding while our court of appeals' decision in *Tanoh is* binding, the Seventh Circuit decision is inapposite.  In *In re Abbott*, the plaintiffs' memorandum specifically requested consolidation "through trial," 698 F.3d at 571.  Here, plaintiffs claim they filed their petition for pretrial purposes only, and the language of the petition contains no language indicating they sought coordination through trial as well.  Therefore, this order finds removal under CAFA to have been premature.  To that extent, this order mirrors a previous ruling of the undersigned judge in a similar case, as well as others from our district.  *See Rice v. McKesson Corp.*, No. 12-5949, 2013 WL 97738 (N.D. Cal. 2013); *Freitas v. McKesson Corp.*, No. 12-5948, 2013 WL 685200 (N.D. Cal. 2013) (Judge Samuel Conti); *Posey v. McKesson Corp.*, No. 12-5939, 2013 WL 361168 (N.D. Cal 2013) (Judge Richard Seeborg).

    **2.**    **REMOVAL UNDER FEDERAL-QUESTION AND SUPPLEMENTAL JURISDICTION GROUNDS WAS IMPROPER**.

In the alternative, however, defendant asserts removal was proper under federal-question and supplemental jurisdiction grounds.  This order disagrees.

Defendant cites decisions from both the Supreme Court and our court of appeals which stand for the proposition that when certain state claims *turn* on federal law, removal of an action to federal court can be proper (Opp., Dkt. No. 24, at 5–6).  This is, of course, an accurate portrayal of when removal can generally be appropriate.  But defendant stretches these authorities too broadly to include the instant action, which only involves whiffs of federal law.  Our court of appeals has made clear that "[t]he 'mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'"  *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674–75 (9th Cir. 2012) (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  In other words, if the "gravamen" of the action is not a federal issue, or if the federal issues are not "pivotal" to resolution, then federal-question jurisdiction is inappropriate.  *See id.* at 675.

Defendant presents two main arguments that a federal question exists here:  (1) plaintiffs cited defendants' alleged "failure to comply with federal standards and requirements" throughout their complaint; and (2) the allegations against defendants who manufactured generic

4

1  propoxyphene products ("generic defendants") revolve around the "federal duty of sameness."
2  More specifically, defendant characterizes plaintiffs' complaint as one that generally alleged
3  that generic defendants violated the federal duty of sameness, which requires that "[t]he [generic
4  drug's] labeling must be the same as the listed drug product's labeling because the listed drug
5  product is the basis for [generic drug] approval." *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567, 2575
6  (2011).

During the hearing, defendant singled out one example where plaintiffs' complaint supposedly implicated a federal question: "As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of propoxyphene, and the Defendants' failure to comply with federal standards and requirements, Plaintiffs suffered severe and permanent injuries herein alleged[]" (Compl. ¶ 428). Vague references to federal laws and regulations do not turn what are explicitly or inherently state causes of action into federal issues. As masters of their complaint, plaintiffs presumably pleaded state-law causes of action to avoid removal to federal court.

Contrary to defendant's characterizations, plaintiffs did not *simply* allege that generic defendants breached their "federal duty of sameness" by not including the same labels as the brand-name propoxyphene product manufacturers. On the contrary, plaintiffs alleged that generic defendants breached their state duty to warn by *not* making various labeling changes *in spite of* the federal duty of sameness. Specifically, plaintiffs alleged that when the FDA ordered brand-name defendants to change their label in 2009 (Compl. ¶ 3), the FDA also authorized generic defendants to change their labels to what the FDA ordered, "without running afoul of the requirement of 'sameness' because federal law expressly permits generic labeling to differ from [Reference Listed Drug] labeling where the labeling revision is 'made to comply with current FDA labeling guidelines or other guidance'" (Compl. ¶ 6) (citing 21 C.F.R. 314.94(a)(8)(iv)).

While not explicitly characterizing its argument as a preemption defense, defendant appears to imply that plaintiffs' failure-to-warn claims are federally preempted (Opp., Dkt. No. 24, at 10). Defendant cites *Mensing* to argue that the "[Supreme Court] explicitly held that federal law preempts claims premised on alleged failure to warn about the risks of generic

5

1 medications" (Opp., Dkt. No. 24, at 10) (citing 131 S.Ct. 2567). Even if that were so, such a
2 defense — by itself — would not help defendant here, because "it is now settled law that a case
3 may *not* be removed . . . on the basis of a federal defense, including . . . pre-emption, even if the
4 defense is anticipated in the plaintiff's complaint, and even if both parties concede that the
5 federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386,
6 393 (1987) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
7 463 U.S. 1, 12 (1983)) (emphasis in original).

8 There is, however, a narrow exception. "On occasion, the Court has concluded that the
9 pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state
10 common-law complaint into one stating a federal claim for purposes of the well-pleaded
11 complaint rule.'" *Id.* at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).
12 Thus, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based
13 on that pre-empted state law is considered, from its inception, a federal claim, and therefore
14 arises under federal law." *Id.* at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 24). Examples
15 include the complete preemption of Texas Health Care Liability Act claims by a specific
16 provision of ERISA, *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), and the complete
17 preemption of state-law usury claims against national banks by the National Bank Act,
18 *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003).

19 In *Mensing*, the Supreme Court held that had the generic drug manufacturers
20 "independently changed their labels to satisfy their state-law duty, they would have violated
21 federal law." *Mensing*, 131 S.Ct. 2578. Therefore, "federal drug regulations applicable to
22 generic drug manufacturers directly conflict[ed] with, and . . . pre-empt[ed]" state-law claims
23 based on generic drug manufacturers' alleged failure to provide adequate warning labels. *Id.* at
24 2572. In light of that holding, supplemental briefing was requested from counsel as to whether
25 state failure-to-warn claims are *completely* preempted in our own case (Dkt No. 25).

26 After reviewing the record before it, however, this order concludes *Mensing* does not
27 apply here. In our case, the FDA allegedly directed brand-name defendants to strengthen their
28 label in 2009, and generic defendants were obligated to follow suit. The complaint accuses

6

generic defendants of failing to do something that FDA rulings already required. This is unlike *Mensing*, where the complaint criticized the generic defendants for conduct required by federal law.

In its briefs and during the hearing, defendant cited *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), to support its contention that plaintiffs' complaint, by trying to artfully avoid *Mensing*, actually pleaded into federal-question jurisdiction. In *Grable*, the Supreme Court noted that it has refused to adopt a "'single, precise, all-embracing test' for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." 545 U.S. at 314 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 821 (1988) (Stevens, J., concurring)). Assuming we have non-diverse parties here, and plaintiffs' complaint implicates a federal issue, that alone is not enough for federal jurisdiction, because "[the Supreme Court has not] treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Ibid*. Therefore, if "the law that creates the cause of action is state law . . . federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is really one of federal law." *See Franchise Tax Bd.*, 463 U.S. at 13 (internal quotations omitted). Here, the federal duty of sameness is incidental to plaintiffs' state-law claims, and not a necessary element of them.

Finally, defendant also cited a non-binding decision in support of its opposition to remand. While *Bowdrie v. Sun Pharm. Indus. Ltd.*, No. 12-853, 2012 WL 5465994 (E.D.N.Y. Nov. 9, 2012) is similar to the instant action, it can be distinguished in that the *Bowdrie* plaintiffs alleged that the brand-name reference drug there *did* change its label, and the generic drug manufacturers failed their federal duty of sameness. *Id.* at *1. Here, plaintiffs allege that neither the brand-name manufacturers nor generic defendants changed their labels, and that the latter could have done so in spite of their federal duty of sameness. *Bowdrie* is not only non-binding, it is inapposite.

7

**CONCLUSION**

For the reasons stated above, plaintiffs' motion to remand is **GRANTED**. The Clerk shall remand this action to the Superior Court of California, County of San Francisco.

**IT IS SO ORDERED.**

Dated:  March 28, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE